# MACE et al. v TINGEY

No. 6694. Decided June 20, 1944. (149 P. 2d 832.)

See 4 C. J. S. Appeal and Error, sec. 289. Admissibility of declarations by donor subsequent to alleged gift on issue as to gift, note, 195 L. R. A. 398. See, also, 24 Am. Jur. 793.

*Ralph Sheffield* and *Nephi Jensen,* both of Salt Lake City, for appellant.

*E. LeRoy Shields,* of Salt Lake City, for respondent.

LARSON, Justice.

An action by plaintiff, as executor of the last will of Elizabeth Emma Dyer, deceased, to recover a judgment of $2,000 allegedly loaned by her to defendant. The jury found for defendant, no cause of action. Plaintiff appeals, presenting four propositions: (1) The court erred in admitting testimony as to the health of deceased during the time she lived with defendant (1937 to 1942); (2) Error in admitting evidence that the employment of deceased by defendant ceased in 1938; (3) Error in permitting defendant to testify that she paid funeral expenses of deceased amounting to about $400; (4) That the verdict is contrary to the evidence. We consider the first two assignments together.

(1) and (2)

The undisputed record reveals that in September, 1937, Elizabeth Emma Dyer, herein called deceased, an elderly spinster, entered the home and employment of defendant as a domestic; that in November 1938, due to a combination of defendant's financial condition and the impaired state of health of deceased, such employment terminated, but deceased continued to live in defendant's home with charge until her death in April 1942, except for a short time (about six weeks) in 1941 when she was in a

hospital. Plaintiff contends that the court erred in admitting testimony as to these facts and evidence showing that during part of that time deceased was either practically an invalid or unable to completely care for herself or to work, on the ground, such evidence was irrevalent and immaterial. Was such objection well taken? Plaintiff refers to no authority where this point was involved, but the question is not one of first impression. Where, as here, the question is as to whether the transaction was a loan or a gift, and neither party can testify thereto, the circumstances under which the transaction took place are certainly material in determining the intent of the donor and the purpose for which the property was turned over. Testimony touching the motives, inducements, or reasons for the donor turning the property to the donee, rather than the heirs is pertinent to the issues. *Gilham* v. *French,* 6 Colo. 196, 23 Pac. St. Rep. 196; Nichols Applied Evidence, Vol. 3, p. 2383; and is admissible for the purpose of sustaining the probability that the gift was in fact made. 38 C. J. S., Gifts, § 66, p. 867, *Sando* v. *Smith,* 237 Ill. App. 570; 28 C. J. 674, and note 96. The relation of the parties, the situation then existing, and the circumstances under which the gift was made, including the donor's previous life, habits and relations to others, as well as the condition of the donor at the time of the gift may be considered by the court; *Russell* v. *Langford,* 135 Cal. 356, 67 P. 331; so too evidence of friendly or affectionate relations between the parties, *Young* v. *Anthony,* 119 App. Div. 612, 104 N. Y. S. 87; *Smith* v. *Maine,* 25 Barb., N. Y. 33; *Rhodes* v. *Childs,* 64 Pa. 18; that the parties had resided together, *Currie* v. *Langston,* 92 Mont. 570, 16 P. 2d 708; and that the donee had rendered service to the donor, *Young* v. *Anthony,* supra; 38 C. J. S., Gifts, § 66, p. 868; 28 C. J. 674; is admissible on the question of motive and intent. To show the attitude of other courts toward the question, we quote from *Currie* v. *Langston,* supra [92 Mont. 570, 16 P. 2d 711]:

"It is contended that the court erred in permitting defendant to show on the cross-examination of plaintiff that he had not visited his uncle for the past 21 years. * * * It was proper on cross-examina-

tion to develop the relationship between the witness and John G. Currie, and the extent of the acquaintanceship between them, to rebut the inference, brought out on direct examination, that, because of the blood relationship between the plaintiff and deceased, plaintiff would be the one to whom the decedent desired to leave his property.

"Over plaintiff's objection, defendant was permitted to show why he was residing with Currie, and that it was at the latter's request, and plaintiff assigns this as error. The evidence was admissible as bearing upon the probability of Currie making the gift claimed by defendant.

"Plaintiff assigns error in permitting defendant to testify over objection that Currie had agreed to leave his entire estate to defendant. This was admissible to show the feelings existing between Currie and defendant and to show the probability of the gift claimed. See generally 28 C. J. 675, 676."

The court goes on to say that it was no error to permit defendant to testify that deceased told him he had no use for his relatives and that some of them had beaten him out of money, saying:

"It [the evidence] bore directly upon the feelings of Currie toward those who would naturally be the subjects of his bounty, and explains the seeming improbability that he would make a gift to one not related by blood or marriage, such as that claimed by defendant."

In *Sands* v. *Dildine,* 175 Okl. 520, 54 P. 2d 171, 172, the court was speaking about what is necessary to a determination of the intention, when delivery is made to an agent—the necessity of finding whether he be agent of the donor or a trustee for the donee, but what is said expressed the situation in the instant case as to what is proper evidence to be considered in determining whether there was a gift:

"The determination of this fact rests on the intention of the donor, *the situation and relationship of the parties,* the kind and character of the property, and the things said, written, or done in regard thereto." (Italics added.)

And in *Held* v. *Meyers,* 48 Ohio App. 131, 192 N. E. 540, 541, it was said:

"Objections have been made relating to the introduction of evidence bearing on the relations existing between the decedent and Mrs. Myers

and her husband, on the one hand, and between the decedent and the members of his family, on the other, and as to many other incidental matters having little, if any, relation to the merits of the case. The evidence showing those relations to have been friendly or otherwise was competent as bearing on the intent of Tattersall in making the transfer, and those relations, whatever they were, were well known at the time to all parties to the transaction."

See also *Madison Trust Co.* v. *Allen*, 105 N. J. Eq. 230, 147 A. 546; *McBride* v. *Mercantile-Commerce Bank & Tr. Co.*, 330 Mo. 259, 48 S. W. 2d 922; *Davis* v. *Parsons*, 165 Cal. 70, 130 P. 1055. Because there was a direct conflict in the evidence, it was for the jury to determine whether they would believe defendant, and her witnesses, or plaintiff's witnesses. To enable the jury to intelligently determine which was entitled to credence they must have all the facts before them; the background of the case and the situation of the parties. From such things appear interest of witnesses, possible bias, and an explanation of possible reasons for the conduct of the parties. The testimony dealt with in the first two assignments falls within that category— background material which is valuable in enabling the jury to properly evaluate the testimony. The fact that deceased had been in ill health for some time prior to her death, but nevertheless continued to live with defendant and was cared for by her made more probable defendant's theory, urged in the pleadings and on trial, that the money was a gift rather than a loan. Since defendant was precluded by statute from testifying directly as to the transaction which took place, this indirect evidence tending to show a situation which would make such contention probable was not only proper but important in consideration of defendant's contention. Furthermore, plaintiff's witness first testified that deceased had gone to the hospital while living with defendant, and defendant's questions merely amplified this information to show that deceased had been in ill health for some time before her death. What has been said above regarding the first assignment applies with equal force to the second. Here too, it was plaintiff's witness who first testified that

deceased left defendant's employ and defendant's testimony merely enlarged upon this by showing that when deceased returned it was not in an employment capacity. The position occupied by all of this testimony is aptly illustrated by the remarks of plaintiff's attorney arguing upon defendant's objection to some collateral evidence. He then said:

"Just give the jury a picture of the whole case is all. A lot of this is preliminary and shows the relationship between the two of them." (Referring to the relationship between deceased and defendant.)

There was no error in admission of this testimony.

(3) As to the testimony relative to payment by defendant of the funeral expenses of deceased, plaintiff must likewise fail. He makes the ingenious argument that such evidence was prejudicial because the jury was instructed that if they found in favor of plaintiff they must return a verdict of $2,000 against defendant. This, it is argued, the jury would not do knowing that defendant had paid a portion of the funeral expenses out of her own pocket. But what grounds is that for complaint? Plaintiff's witness, one of the executors of the will, testified that he told defendant to pay the funeral expenses, but said that he did not know how much they were, who had paid them, or even whether they had been paid. Thereafter defendant testified to the amount of the funeral expenses, and that she had paid them, partly out of her own pocket, and partly from the balance on hand in deceased's bank account. When defendant was asked who paid the funeral expenses counsel for plaintiff objected that it was immaterial. The court in ruling stated that he could not tell if it was material until he knew what the evidence was, and so would permit the witness to answer. In short, the ruling was made pro forma. Counsel thereafter made no motion to strike the evidence, or to instruct the jury that it should disregard it. Instead counsel cross-examined the witness about it and had her testify to the same fact. On the record we cannot say that the mere statement that defendant paid $400 of the funeral expenses from her own pocket was prejudicial error.

We might observe that counsel's argument now made that the jury might have been prejudiced against plaintiff for insisting on a judgment for $2,000 when the evidence conclusively showed that even if their contention was right they would only be entitled in good conscience and even handed justice to judgment for $1,600, is rather naive. If there was prejudice by this situation it was caused by plaintiff's own conduct. Under the rule laid down in *Guaranty Mortgage* v. *Wilcox*, 62 Utah 184, 218 P. 133, 135, 30 A. L. R. 1324, that:

"Our statute clearly states, and this court has so frequently held, that it has become elementary, that no judgment shall be reversed, unless upon the whole record it is made to appear that a substantial right of the complaining party has been invaded or disregarded." See also *Shaw* v. *O'Byrne*, 64 Utah 139, 228 P. 570.

(4) This brings us to the last assignment of error: that the verdict is contrary to, and not supported by, the evidence. Of course a verdict for defendant "no cause of action" need not be supported by any evidence at all unless the answer is a confession and avoidance—one which puts the full burden of proof on defendant. Is the verdict contrary to the evidence? Generally the donee has the burden of proving a gift. *Blackburn* v. *Jones*, 59 Utah 558, 205 P. 582; *Ward* v. *Ward*, 94 Or. 405, 185 P. 906. But when an action is brought to recover money alleged to have been loaned by plaintiff to defendant under an oral contract, and defendant claims the money was a gift, the plaintiff has the burden of proving the alleged oral agreement to repay. *Payne* v. *Williams*, 62 Colo. 86, 160 P. 196. Ordinarily there is no presumption against a gift. *Jackson* v. *Lamar*, 67 Wash. 385, 121 P. 857. There was here no witness who testified directly as to the transaction. Plaintiff produced witnesses, beneficiaries under the will, or relatives, who testified that defendant told them the money was a loan and that she should have signed a note. The so-called "dead man statute," Subdivision 3 of 104-49-2 U. C. A. 1943, was invoked by plaintiff to prevent defendant testifying as to

what actually occurred when the money changed hands. Defendant, as a witness however, denied making the statements attributed to her by plaintiff's witnesses. She offered a witness who corroborated her denial that she had stated the money was a loan; another witness testified that deceased had told him she had given defendant the money. Evidence, some phases of which we have discussed in connection with other questions, was offered by both sides relative to the relationship between deceased and the beneficiaries under the will; also between deceased and the defendant. There was a direct conflict in the evidence as to whether the transaction was a loan or a gift. The question was properly submitted to the jury. It found for defendant, no cause of action. The verdict is not contrary to the evidence.

Judgment affirmed. Costs to respondent.

WOLFE, C.J., and McDONOUGH, WADE, and TURNER, JJ., concur.